UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| LAQUAN PERKINS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) No.   3:21-cv-00711-GCS |
| | ) |
| CHRISTINE BROWN, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### I. INTRODUCTION

Plaintiff Laquan Perkins, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Pinckneyville Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. In his Complaint (Doc. 1), Perkins alleges he was denied medical care for his facial numbness in violation of the Eighth Amendment. On December 7, 2021, the Court conducted a preliminary review of the complaint pursuant to 28 U.S.C. § 1915A and allowed Perkins to proceed on an Eighth Amendment deliberate indifference claim against Defendant Christine Brown for failing to provide him with care for his loss of facial sensation and issues with his eyesight and hearing. (Doc. 11).

Now pending before the Court is a July 8, 2022 motion for summary judgment on the issue of exhaustion of administrative remedies filed by Defendant Brown. (Doc. 32,

33). Brown argues that Plaintiff failed to exhaust his administrative remedies prior to filing the present lawsuit because he did not file any grievances which address his claims against Defendant Brown pursuant to the procedures set forth in the Illinois Administrative Code. Along with the motion for summary judgment, Defendant Brown filed the required Federal Rule of Civil Procedure 56 notice informing Perkins of the consequences of failing to respond to the motion for summary judgment. (Doc. 34). Perkins opposes the motion. (Doc. 40). The Court held a hearing on the motion on November 2, 2022, heard testimony from Perkins and argument from the parties, and took the matter under advisement. (Doc. 43). For the following reasons, the motion for summary judgment filed by Defendant Brown is **DENIED**.

## II.    FACTS

On March 1, 2020, Perkins filed a grievance concerning the issues in this lawsuit.[1] Perkins does not name Brown in this March 1, 2020 grievance. The grievance states in pertinent part:

> On the date of 2-6-2020, I went to a outside Dental Care Unit that the Dental in Pinckneyville C. Center couldn't take care of arose of my right bottom wisdom tooth was sitting on a nerve that I.D.O.C. Pinckneyville Dental can't operate on. So they decided to send me to a outside Dental Care Unit, which the Dental name is (Jay J. Swanson) who operated on my right side bottom

---

[1]    Plaintiff testified that he filed a follow up grievance, #137-05-21, regarding his dental on May 10, 2021 and that he attached that grievance to his complaint. Perkins states that the Chief Administrative Officer denied the grievance on June 9, 2021, that he appealed the grievance to the ARB, and that he never received a response from the ARB. The Court has reviewed the complaint and cannot find such a grievance. However, this grievance is referenced on Doc. 1, p. 91. The Court need not address this grievance as the Court finds that the March 1, 2020 grievance exhausts administrative remedies as to Plaintiff's claim against Defendant Brown.

> wisdom tooth which left me in pain due to the many shots the outside Dental treatment has giving me that left the right side of my face numb for about 3.5 week's, can't hear out of my right ear. In I.D.O.C. State Law for a inmate that all medical treatment must be handle to the proper manner of care. I as a inmate warded to the state of I.D.O.C. shouldn't have to suffer the pain and lost of hearing in the right ear. I went to sick call and told the nurse what is going on with me. She states that it's not normal for a person to be losing hearing lost or numb to the side and the face, which they sent me back on 2-20-2020 to the same Dental Care Unit with the same action of nothing done, with 5 shots . . . .

(Doc. 33-4, p. 4, 5). Perkins requested the following relief: "[T]hat Pinckneyville C. Center look into this matter of wrongful medical treatment and that the Dental Care Unit outside office be investigated by the proper chain of command starting with Pinckneyville C. Center Health Care Unit Dental office here." *Id.* at p. 4. On November 2, 2020, Adewale Kuforiji of the Administrative Review Board ("ARB") denied Perkins's grievance finding that Perkins's "medical treatment is going and continues to be seen and referral made as deemed as appropriate." *Id.* at p. 1. Rob Jeffreys, the Acting Director, concurred with this finding. *Id.*

### III.    LEGAL STANDARDS

Summary Judgment is proper if the pleadings, discovery materials, disclosures and affidavits demonstrate no genuine issue of material fact such that [Defendants are] entitled to judgment as a matter of law." *Wragg v. Village of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). Lawsuits filed by inmates are governed by the provisions of the Prison Litigation Reform Act ("PLRA"). *See* 42 U.S.C. § 1997e(a). That statute states, in pertinent part, that "no action shall be brought with respect to prison conditions under section 1983

of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* (emphasis added). The Seventh Circuit requires strict adherence to the PLRA's exhaustion requirement. *See, e.g.*, *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006)(noting that '[t]his circuit has taken a strict compliance approach to exhaustion"). Exhaustion must occur before the suit is filed. *See Ford v. Johnson*, 362 F.3d 395, 398 (7th Cir. 2004). Plaintiff cannot file suit and then exhaust his administrative remedies while the suit is pending. *Id.*

Moreover, "[t]o exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison administrative rules require." *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). Consequently, if a prisoner fails to use a prison's grievance process, "the prison administrative authority can refuse to hear the case, and the prisoner's claim can be indefinitely unexhausted." *Dole*, 438 F.3d at 809. The purpose of exhaustion is to give prison officials an opportunity to address the inmate's claims internally, prior to federal litigation. *See Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)

Under *Pavey*, the Seventh Circuit held that "debatable factual issues relating to the defense of failure to exhaust administrative remedies" are not required to be decided by a jury but are to be determined by the judge. *Pavey v. Conley*, 544 F.3d 739, 740-741 (7th Cir. 2008). Thus, where failure to exhaust administrative remedies is raised as an affirmative defense, the Court set forth the following procedures:

> The sequence to be followed in a case in which exhaustion is contested is therefore as follows: (1) The district judge conducts a hearing on exhaustion and permits whatever discovery relating to exhaustion he deems appropriate. (2) If the judge determines that the prisoner did not exhaust his administrative remedies, the judge will then determine whether (a) the plaintiff has failed to exhaust his administrative remedies, and so he must go back and exhaust; (b) or, although he has no unexhausted administrative remedies, the failure to exhaust was innocent (as where prison officials prevent a prisoner from exhausting his remedies), and so he must be given another chance to exhaust (provided that there exist remedies that he will be permitted by the prison authorities to exhaust, so that he's not just being given a runaround); or (c) the failure to exhaust was the prisoner's fault, in which event the case is over. (3) If and when the judge determines that the prisoner has properly exhausted his administrative remedies, the case will proceed to pretrial discovery, and if necessary a trial, on the merits; and if there is a jury trial, the jury will make all necessary findings of fact without being bound by (or even informed of) any of the findings made by the district judge in determining
> that the prisoner had exhausted his administrative remedies.

*Id.* at 742.

As an inmate confined within the Illinois Department of Corrections, Perkins was required to follow the regulations contained in the Illinois Department of Correction's Grievance Procedures for Offenders ("grievance procedures") to exhaust his claims. *See* 20 ILL. ADMIN. CODE § 504.800, *et seq*. The grievance procedures first require inmates to file their grievance with the counselor within 60 days of the discovery of an incident. *See* 20 ILL. ADMIN. CODE § 504.810(a). The grievance form must:

> contain factual details regarding each aspect of the offender's complaint, including what happened, when, where, and the name of each person who is the subject of or who is otherwise involved in the complaint. This provision does not preclude an offender from filing a grievance when the names of individuals are not known, but the offender must include as much descriptive information about the individual as possible.

20 ILL. ADMIN. CODE § 504.810(c). Grievances that are unable to be resolved through routine channels are then sent to the grievance officer. *See* 20 ILL. ADMIN. CODE §504.820(a). The Grievance Officer will review the grievance and provide a written response to the inmate. *See* 20 ILL. ADMIN. CODE § 504.830(a). "The Grievance Officer shall consider the grievance and report his or her findings and recommendations in writing to the Chief Administrative Officer within two months after receipt of the grievance, when reasonably feasible under the circumstances." 20 ILL. ADMIN. CODE § 504.830(e). "The Chief Administrative Officer shall review the findings and recommendation and advise the offender of his or her decision in writing. *Id.*

If the inmate is not satisfied with the Chief Administrative Officer's response, he or she can file an appeal with the Director through the ARB. The grievance procedures specifically state, "[i]f, after receiving the response of the Chief Administrative Officer, the offender still believes that the problem, complaint or grievance has not been resolved to his or her satisfaction, he or she may appeal in writing to the Director. The appeal must be received by the Administrative Review Board within 30 days after the date of the decision." 20 ILL. ADMIN. CODE § 504.850(a). The inmate shall attach copies of the Grievance Officer's report and the Chief Administrative Officer's decision to his appeal. *Id.* "The Administrative Review Board shall submit to the Director a written report of its findings and recommendations." 20 ILL. ADMIN. CODE § 504.850(d). "The Director shall review the findings and recommendations of the Board and make a final determination of the grievance within 6 months after receipt of the appealed grievance, when reasonably

feasible under the circumstances. The offender shall be sent a copy of the Director's decision." 20 ILL. ADMIN. CODE § 504.850(e).

## IV.  ANALYSIS

Defendant Brown maintains that Perkins's March 1, 2020 grievance regarding the issue in this lawsuit does not reference any action or inaction by Brown, thus, Perkins failed to exhaust his administrative remedies against her.

Exhaustion of administrative remedies is an affirmative defense in an action against prison officials, and the burden of proof is on the officials. Here, the undersigned finds Defendant Brown has not met her burden and that Perkins did exhaust his claim as to her. The grievance procedures require that an inmate name the individuals involved in the complaint, or, if their names are not known, an inmate, must at the very least, "include as much descriptive information about the individual as possible." 20 ILL. ADMIN CODE § 504.810(a)(b). *See also Ambrose v. Godinez*, No. 11-3068, 510 Fed. Appx. 470, 472 (7th Cir. Feb. 22, 2013); *but see Jackson v. Shepherd*, No. 13-2651, 552 Fed. Appx. 591, 593 n.1 (7th Cir. Feb. 6, 2014). Further, the Seventh Circuit has held that an inmate is required to provide enough information to serve a grievance's function of giving "prison officials a fair opportunity to address [an inmate's] complaints." *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). This fits within the purpose of the PLRA exhaustion requirement, which was designed to afford correctional officials a chance to address inmate complaints internally, prior to resorting to federal litigation. *See, e.g.*, *Kaba*, 458 F.3d at 684 (citing *Woodford v. Ngo*, 548 U.S. 81, 93 (2006)). Indeed the Seventh Circuit has consistently

reminded district courts that "all the PLRA requires" is that a grievance "alert the prison to the nature of the wrong for which redress is sought[.]" *Westefer v. Snyder*, 422 F.3d 570, 580 (7th Cir. 2005)(citing *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002)). An inmate is not required to provide personal notice of suit to an individual defendant through his grievance. *See Maddox*, 655 F.3d at 722 (citing *Jones v. Bock*, 549 U.S. 199, 219 (2007)).

Here, the undersigned finds that Perkins provided enough information to put the prison officials on notice of the nature of his claim against Defendant Brown. The March 1, 2020 grievance provides enough detail to inform the prison officials that Defendant Brown was involved somehow in his ongoing medical care. As stated previously, the grievance states in part: "I went to sick call and told the nurse what is going on with me. She states that it's not normal for a person to be losing hearing lost or numb to the side and the face . . . ." Construing the evidence in the light most favorable to Perkins, the Court finds that he did exhaust his administrative remedies against Defendant Brown.

## V. CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant Brown's motion for summary judgment on the issue of exhaustion (Doc. 32).

**IT IS SO ORDERED.**

**DATED:** November 18, 2022.

Digitally signed by Judge Sison 2
Date: 2022.11.18
11:15:24 -06'00'

**GILBERT C. SISON**
**United States Magistrate Judge**